IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MANDALE BATES, | : | Case No. 3:11-cv-327 |
| Petitioner, | | District Judge Walter H. Rice |
| | : | Magistrate Judge Michael J. Newman |
| vs. | | |
| WARDEN, SOUTHERN OHIO CORRECTIONAL FACILITY, | : | |
| Respondent. | : | |

### REPORT AND RECOMMENDATION[1]

Pursuant to 28 U.S.C. § 2254, Petitioner Mandale Bates ("Petitioner" or "Bates"), through counsel, brings this petition for a writ of *habeas corpus*. He pleads one ground for relief: ineffective assistance of counsel based on his trial attorney's alleged failure to obtain a police report to discredit a victim's identification of him at his trial.[2] *See* doc. 1.

### I. BACKGROUND

In August 2005, a jury found Petitioner guilty of: (1) one count of receiving stolen property; (2) one count of felonious assault with an attached firearm specification; and (3) one count of having weapons while under a disability in the Clark County, Ohio Common Pleas Court. Doc. 6-2. He was sentenced to a total of sixteen years of imprisonment. *Id.*

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Petitioner's counsel attached a six-page memorandum to his *habeas* petition. *See* doc. 1 at PageID 16-21. However, he did not file a Traverse/Reply. In the memorandum, Petitioner explains that Jamie Cromwell identified him as one of two masked men who entered her residence on May 17, 2005, struck her in her head, and robbed her. Doc. 1 at PageID 17-21. Cromwell testified that she recognized Petitioner from a prior incident on May 7, 2005 -- when she saw him in her backyard -- for which she filed a police report. *Id.* After his trial, Petitioner's third attorney -- representing him in his post-conviction proceedings -- obtained the report and found that it did not contain any descriptions of the two men in her backyard (*e.g.*, their race, height). *Id.* Petitioner contends that, had his counsel obtained that May 7, 2005 police report, he could have used it to undermine Cromwell's identification of him. *Id.*

The Ohio Court of Appeals for the Second District summarized the facts underlying Petitioner's convictions as follows.[3]

> The events giving rise to this matter began on May 17, 2005, at the residence of Chad Foland, Jamie Cromwell and their three children, located at 2323 Irwin Drive, in Clark County, Ohio. Foland was playing a video game in the living room, and Cromwell was resting on a loveseat when a masked man with a gun came through their back door. Foland fled to the bathroom, tried to slide down the laundry shoot, and then climbed out the bathroom window. Foland ran to the home next door and called 911. Cromwell remained in the living room. A second man with a gun entered the home through the back door. The first man initially chased Foland, and when he was unable to find him, the man returned to the living room. The second man put a blanket over Cromwell's head. The first man asked Cromwell "where all the weed was," "where all the money was" and "where's your gun." Cromwell responded that she did not have any weed, money or a gun, and the first man lifted up the blanket and struck her head with his gun.
> 
> When the police responded to the Irwin Drive address, both suspects fled in a car. Officer Dan Harris pursued the vehicle. The men soon abandoned the vehicle and fled on foot. They left the car in gear, and it struck an embankment. Officer Harris approached the car and located several items, including a handgun on the floorboard of the passenger seat, a cooler and a trash bag in the back seat. Inside the cooler were numerous items removed from the Irwin Drive residence, including personal identifications, jewelry, a man's wallet, and a baggie of marijuana. Police also recovered a digital scale and baggie of cocaine from inside the cooler. A baggie of marijuana was found in the trash bag. Foland admitted that one of the baggies of marijuana was his, but he denied that the cocaine and scale belonged to him.
> 
> ***
> 
> Bates was apprehended after fleeing the car which contained items taken from Foland's and Cromwell's home.

*State v. Bates*, No. 2005 CA 83, 2006 Ohio App. LEXIS 4163, at *2-4, *17 (Ohio Ct. App. Aug. 11, 2006) (doc. 6-6 at PageID 107-08, 117).

With the assistance of new counsel, Petitioner appealed his conviction and sentence to the Ohio Court of Appeals for the Second District, raising six assignments of error. *See* docs. 6-3; 6-4. On August 11, 2006, the Ohio Court of Appeals affirmed Petitioner's convictions, but remanded Petitioner's case to the trial court for re-sentencing pursuant to *State v. Foster*, 109

---

[3] Those factual findings are presumed to be correct because Petitioner has not rebutted that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Girts v. Yanai*, 501 F.3d 743, 749 (6th Cir. 2007).

Ohio St. 3d 1 (2006). Doc. 6-6. Petitioner did not appeal the remainder of the Court of Appeals' judgment -- overruling his other assignments of error.

On September 7, 2006, the trial court held a hearing to re-sentence Petitioner in accordance with *Foster*. Doc. 6-7. The trial court imposed the same sentence for each count, but ordered that the sentences be served concurrently. *Id.* Petitioner, accordingly, was re-sentenced to a total of eleven years of imprisonment. *Id.* Petitioner did not appeal his re-sentencing.

In September 2009, Petitioner, with the assistance of counsel, filed in the Clark County Common Pleas Court an untimely petition for post-conviction relief pursuant to Ohio Revised Code § 2953.21, raising the same ineffective assistance of counsel claim that he raises herein.[4] Doc. 6-8. The court summarily overruled his post-conviction petition. Doc. 6-10. Petitioner appealed to the Ohio Court of Appeals. Docs. 6-11, 6-12. On July 23, 2010, the Ohio Court of Appeals affirmed the trial court's judgment. Doc. 6-14. Petitioner appealed that ruling to the Ohio Supreme Court, *see* docs. 6-15, 6-16, but it declined to exercise jurisdiction over his appeal. Doc. 6-17.

## II. ANALYSIS

### A. Statute of Limitations

Respondent contends that Petitioner's *habeas* petition should be dismissed as time-barred. 28 U.S.C. § 2244(d) provides in relevant part:

> (1) A 1-year period of limitation shall apply to an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> \*\*\*

---

[4] Petitioner was represented by a third attorney in his post-conviction proceedings in state court. The same attorney represents him in this *habeas* case.

>   (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Under § 2244(d)(1)(A), Petitioner's conviction became final on October 17, 2006 -- *i.e.*, the day after the 30-day period to appeal his new sentence (journalized on September 14, 2006) expired.[5]  S*ee* doc. 6-7; Ohio App. R. 4(A).  *See also Gonzalez v. Thaler*, 565 U.S. ___, 132 S. Ct. 641, 646 (2012) (holding -- when a *habeas* petitioner did not seek review in the state's highest court -- that a conviction becomes "final" for statute of limitations purposes upon the expiration of the time to appeal the conviction); *Rashad v. Lafler*, 675 F.3d 564, 567-68 (6th Cir. 2012) (finding that a *habeas* petitioner's judgment became "final" upon the conclusion of direct review of his new sentence).  Further, Petitioner's untimely filing of a petition for post-conviction relief in 2009 did not restart or toll the one-year statute of limitations.  *See Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003).  Accordingly, the limitations period for Petitioner to file a *habeas* petition expired on October 17, 2007 -- more than three years before he filed his instant *habeas* petition.

Although Petitioner does not explicitly make such an argument, the Court further notes that Petitioner's *habeas* petition is likewise barred pursuant to 28 U.S.C. § 2244(d)(1)(D).  The Court finds that Petitioner has failed to sustain his burden of proving that he exercised due diligence in searching for the factual predicate of his claim as required by 28 U.S.C. § 2244(d)(1)(D).  *See DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006).  Petitioner was aware of his counsel's assertion -- that he was unable to obtain the police report -- at his trial.  Yet he has not offered any evidence showing how he made any further attempts to obtain the report

---

[5] "Journalization of the judgment of conviction pursuant to Crim. R. 32(C) starts the 30-day appellate clock ticking. App. R. 4(A)."  *State v. Baker*, 893 N.E.2d 163, 165 (Ohio 2008).  Further, when the thirtieth day falls on a Saturday, as it did here, the deadline is extended to the Monday (*e.g.*, October 16, 2006).  *See* Ohio App. R. 14(A).  *See also Wojton v. Riverside Apartments*, No. 14691, 1995 Ohio App. LEXIS 689, at *3 (Ohio Ct. App. Feb. 3, 1995).

himself (*e.g.*, through his new appellate counsel on direct appeal, by requesting it from the police department, or by making a public records request).  Indeed, on direct appeal, Petitioner challenged Jamie Cromwell's identification on due process grounds, *see* doc. 6-4 at PageID 69-73, but did not mention his attorney's failure to obtain the police report.[6]  *See* doc. 6-4.  Accordingly, Petitioner's *habeas* petition is also barred under 28 U.S.C. § 2244(d)(1)(D).  *Accord McCoy v. Jones*, 463 F. App'x 541, 549 (6th Cir. 2012) (finding that the *habeas* petitioner failed to show due diligence under 28 U.S.C. § 2244(d)(1)(D)); *Stokes v. Leonard*, 36 F. App'x 801, 805 (6th Cir. 2002) (same).

Finally, the Court notes that this is not the rare case where the doctrine of equitable tolling should apply.  *See Hall v. Warden*, 662 F.3d 745, 749 (6th Cir. 2011).  Petitioner has failed to show that: (1) "he has been pursuing his rights diligently"; and (2) "some extraordinary circumstance stood in his way and prevented timely filing."  *Id.*  Accordingly, Petitioner's petition for *habeas corpus* should be dismissed as untimely pursuant to 28 U.S.C. § 2244(d).

### B. Ground One Has No Merit

In any event, and assuming, *arguendo*, that the Court should proceed to a merits analysis here, the Court finds that Petitioner's only ground for relief (ineffective assistance of counsel) has no merit.  Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when the state court decides a federal constitutional claim on the merits, the federal *habeas* court must defer to the state court decision unless: (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) the state court's decision "was based on an

---

[6] Moreover, although it is not clear exactly when Petitioner learned that his attorney did not attempt to obtain the police report and when his new attorney was able to obtain the report, it appears -- based on the affidavits of Petitioner, Petitioner's wife, and Petitioner's new attorney -- that Petitioner waited over a year thereafter to file his petition for post-conviction relief.  *See* doc. 6-8, at PageID 128-31.  He claims that he waited a year in order to locate witnesses.  *See id.*

unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407–08. "A state court's determination that a claim lacks merit precludes *habeas* relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 786 (2011) (citation omitted).

In affirming the dismissal of his petition for post-conviction relief, the Ohio Court of Appeals determined that Petitioner had not established that, had his counsel obtained the police report and cross-examined Cromwell about the report, no reasonable jury would have found him guilty. *See* doc. 6-14 at PageID 167-70. The Court finds that the Court of Appeals' opinion was neither an unreasonable application of, nor contrary to, clearly established Supreme Court case law. 28 U.S.C. § 2254(d); *Harrington*, 131 S. Ct. at 785-88 (2011); *Williams*, 529 U.S. at 412-13. The Ohio Court of Appeals correctly identified and laid out the two-prong *Strickland v. Washington* test -- requiring a defendant to demonstrate that (1) his counsel's performance was deficient, and (2) he was prejudiced as a result. *See* doc. 6-14 at PageID 167-68; *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard, "a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances,

the challenged action 'might be considered sound trial strategy.'" *Id.* at 689. To satisfy the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The Ohio Court of Appeals reviewed the police report and, applying the *Strickland* standard, determined that Petitioner was not prejudiced by his attorney's failure to obtain that report. *See* doc. 6-14. The Court of Appeals provided the following rationale:

> The Springfield police report attached to Mr. Katchmer's affidavit is for an incident reported at 8:38 p.m. on Saturday, May 7, 2005, from a caller at 2323 Irwin Avenue, Cromwell's residence. The caller reported that she had caught two males in her backyard, and they had fled in a black Blazer toward Reading Drive when she "hollered" at them. The caller indicated that she did not know the men, but they were wearing red shirts. The police report provided no further details regarding the suspects. The report was redacted to remove the name of the caller and the caller's telephone number; we presume that Cromwell was the caller, and the parties do not suggest otherwise.
> Although the police report does not describe the two men in Cromwell's yard, the report does not suggest that Cromwell was unable to describe the suspects further or that she would not recognize the two men if she saw them again. And, the fact that the report exists corroborates Cromwell's testimony that she had filed a previous report due to a prior incident. Moreover, the offenses for which Bates was convicted arose from events occurring on May 17, 2005, i.e., ten days after Cromwell called the police to report the two men in her backyard. The two events thus occurred within a relatively short period of time. In short, Bates's new evidence - the police report - does not establish that Cromwell's identification of Bates was unreliable or inaccurate.
> Furthermore, the State presented additional compelling evidence that Bates committed the offenses on May 17, 2005. Most notably, Cromwell testified that Bates and his co-defendant fled her home when they saw the lights of an approaching police cruiser. Springfield Police Officer Dan Harris, the first law enforcement officer to arrive at the scene, testified that when he was at the intersection of Irwin Avenue and Reading Drive, which was very near to Cromwell's home, he observed "the defendants [Bates and his codefendant] getting into a maroon Pontiac Bonneville" on Reading Drive. Harris stated that he saw Bates, the driver, close the back door of the car, and once the two men were inside, the vehicle "took off at a high rate of speed not turning on the headlights or anything like that ***." Harris pursued the vehicle for approximately eleven

7

>blocks, after which Bates and his co-defendant exited the vehicle and fled on foot in opposite directions. Other officers soon apprehended them. Harris approached the car and located several items, including a black handgun, which Cromwell and her boyfriend had both seen, and a cooler containing various items removed from the Irwin Drive residence, including several rings, personal papers, marijuana, a wallet, and driver's licenses belonging to the victims.

*State v. Bates*, No. 2009 CA 106, 2010 Ohio App. LEXIS 2944, at *12-15 (Ohio Ct. App. July 23, 2010) (doc. 6-14 at PageID 168-69).  Accordingly, even had Petitioner's *habeas* petition been timely filed, he would not have been entitled to *habeas* relief.  The Ohio Court of Appeals appropriately applied the *Strickland* standard and reasonably determined that Petitioner did not meet the prejudice prong of *Strickland*.

### III.  RECOMMENDATION

Based on the foregoing analysis, it is **RECOMMENDED** that Petitioner's § 2254 petition for a writ of *habeas corpus* be **DISMISSED** with prejudice and this case be **TERMINATED** upon the Court's docket.

Reasonable jurists would not disagree with the recommended disposition.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Further, an appeal of an Order adopting this Report and Recommendation would not be taken in objective good faith.  *See* 28 U.S.C. § 1915(a)(3); *Coppedge v. United States*, 369 U.S. 438, 445-46 (1962).  Therefore, if Petitioner seeks to appeal an Order adopting this Report and Recommendation, the Court **RECOMMENDS** that Petitioner be **DENIED** a certificate of appealability and *in forma pauperis* status on such an appeal.

January 23, 2013                                                          s/ **Michael J. Newman**
                                                                          United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).